Raúl R. Labrador
ATTORNEY GENERAL

Lincoln Davis Wilson, ISB #11860
Chief of Civil Litigation
and Constitutional Defense

Andrea H. Nielsen, ISB #7763
Deputy Attorney General
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
lincoln.wilson@ag.idaho.gov
andrea.nielsen@ag.idaho.gov

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARCH FOR OUR LIVES IDAHO and IDAHO ALLIANCE FOR RETIRED AMERICANS,<br><br>     Plaintiffs,<br>v.<br><br>PHIL MCGRANE, in his official capacity as the Idaho Secretary of State,<br><br>     Defendant. | Case No. 1:23-cv-00107-CWD<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

    A.    Idaho simplifies Voter ID law and creates a new free Voter ID............ 3

    B.    Plaintiff organizations challenge Idaho Voter ID law ........................... 5

LEGAL STANDARD ........................................................................................... 6

ARGUMENT ..................................................................................................... 6

I.    Plaintiffs lack Article II standing and the Court lacks jurisdiction ................ 6

    A.    Plaintiffs have no injury in fact ............................................................. 7

        *1.*    *Plaintiffs lack an injury for associational standing* .................... 9

        *2.*    *Plaintiffs lack an injury for organizational standing* ............... 12

    B.    Plaintiffs' claims are not redressable against Defendant..................... 14

        *1.*    *County clerks handle voter registration* ...................................... 15

        *2.*    *The DMV handles Voter ID* ....................................................... 16

    C.    Plaintiffs' claims are unripe................................................................ 17

II.    The Court lacks personal jurisdiction over the Secretary of State ................ 18

CONCLUSION ................................................................................................. 20

TABLE OF AUTHORITIES

CASES

*Addington v. U.S. Airline Pilots Ass'n,*
  606 F.3d 1174 (9th Cir. 2010). .............................................................. 17

*Ass'n of Am. Med. Colls. v. United States,*
  217 F.3d 770 (9th Cir. 2000) ................................................................. 17

*Assoc. Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.,*
  713 F.3d 1187, 1194 (9th Cir. 2013) ....................................................... 9

*Babe Vote v. McGrane,*
  Case No. CV01-23-04534 (4th Jud. Dist. Ct. Idaho) ................................ 5

*Baker v. Carr,*
  369 U.S. 186 (1962) ............................................................................... 7

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013), .............................................................................. 8

*Colwell v. Dep't of Health & Hum. Servs.,*
  558 F.3d 1112 (9th Cir. 2009). ............................................................. 17

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ............................................................................... 7

*Direct Mail Specialists, Inc. v. Eclat Comput. Techs., Inc.,*
  840 F.2d 685 (9th Cir. 1988). ............................................................... 18

*Does 1-134 v. Wasden,*
  No. 1:16-CV-00429-DCN, 2018 WL 2275220 (D. Idaho May 17, 2018) ................... 2

*Echevarria–Gonzalez v. Gonzalez–Chapel,*
  849 F.2d 24 (1st Cir. 1988). ................................................................. 20

*Ex parte Young,*
  209 U.S. 123 (1908) ............................................................................. 16

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) ..................................................................... 7,12,14

*Gill v. Whitford,*
    138 S. Ct. 1916 (2018) ............................................................................................ 8

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ........................................................................................ 12,13

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977) .......................................................................................... 9,11

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. V. Brock,*
    477 U.S. 274 (1986)............................................................................................. 12

*L.A. Cnty. Bar Ass'n v. Eu,*
    979 F.2d 697 (9th Cir.1992). ............................................................................. 16

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
    624 F.3d 1083 (9th Cir. 2010) ........................................................................... 14

*Lance v. Coffman,*
    549 U.S. 437 (2007) ............................................................................................. 8

*Libertarian Party v. Dardenne,*
    No. 08-582-JJB, 2009 WL 790149 (M.D. La. Mar. 24, 2009) ............................ 19,20

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................ 6,7,8

*Mack v. Fox,*
    No. 1:07CV760, 2008 WL 4832995 (M.D. N.C. Nov. 4, 2008)............................. 20

*McCaslin v. Cornhusker State Indus.,*
    952 F. Supp. 652 (D. Neb. 1996) ....................................................................... 20

*Mi Familia Vota v. Abbott,*
    977 F.3d 461 (5th Cir. 2020) ............................................................................. 15

*Moore v. Hosemann,*
    591 F.3d 741 (5th Cir. 2009) ............................................................................. 19

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,*
    526 U.S. 344 (1999). ............................................................................................ 6

*Pennell v. City of San Jose,*
    485 U.S. 1 (1988) .............................................................................................. 12

*Raines v. Byrd,*
    521 U.S. 811 (1997) ................................................................ 8

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,*
    549 U.S. 422 (2007) ................................................................ 6

*Smith v. Pac. Props. And Dev. Corp.,*
    358 F.3d 1097 (9th Cir. 2004) ............................................... 12

*Southwest Voter Registration Education Project v. Shelley,*
    344 F.3d 914  (9th Cir. 2003) ................................................. 2

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ............................................................ 7,8

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) .................................................................. 7

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ........................................................... 9,10

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ............................................................ 7,8

*Table Bluff Rsrv. (Wiyot Tribe) v. Phillip Morris, Inc.,*
    256 F.3d 879 (9th Cir. 2001) ................................................... 6

*Tex. State LULAC v. Elfant,*
    52 F.4th 248 (5th Cir. 2022) ................................................... 14

*Thomas v. Anchorage Equal Rights Comm'n,*
    220 F.3d 1134 (9th Cir. 2000) ................................................. 7

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985) .............................................................. 17

*Twitter, Inc. v. Paxton,*
    56 F.4th 1170 (9th Cir. 2022) ................................................ 17

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,*
    517 U.S. 544, 555 (1996) ........................................................ 9

STATUTES

Idaho Code § 34-1113..................................................................................... 3,4

Idaho Code § 34-1114..................................................................................... 3,4

Idaho Code § 34-208....................................................................................... 15

Idaho Code § 34-209....................................................................................... 15

Idaho Code § 34-107......................................................................................... 3

Idaho Code § 34-206....................................................................................... 15

Idaho Code § 34-213....................................................................................... 15

Idaho Code § 34-408A....................................................................................... 3

Idaho Code § 34-410......................................................................................... 3

Idaho Code § 34-411..................................................................................... 4,15

Idaho Code § 49-2444.......................................................................... 4,11,13,16

H.B. 124, 67th Leg., 1st Reg. Sess. (Idaho 2023)........................................ 3,4,5,11,18

H.B. 340, 67th Leg., 1st Reg. Sess. (Idaho 2023).......................... 3,4,5,11,13,15,16,18

OTHER AUTHORITIES

Fed. R. Civ. P. 4 ..................................................................... 2,6,18,19,20

Charles Alan Wright & Arthur R. Miller,
    *4B Federal Practice and Procedure* § 1110 (4th ed. 2023) ...................................... 19

## INTRODUCTION

In this action, two organizations bring a facial challenge to recent amendments to Idaho's voter ID laws that will make voting easier for everyone when they take effect over the coming year.  Those new laws will establish a free form of universal voter ID and simplify proof of identity and residency for voting, including by removing the use of student IDs that just 104 voters used in the last general election.  Plaintiffs say these laws violate equal protection and the 24th and 26th amendments.  And to hedge their bets on those constitutional claims, they brought this federal challenge in coordination with a similar lawsuit in state court that asserts substantially similar claims under the Idaho Constitution.  Yet while the state-court lawsuit can offer a complete and final adjudication of the constitutionality of these laws, this federal lawsuit cannot.  It is beset with a host of jurisdictional defects that prevent the Court from going any further.  The Court lacks jurisdiction and should dismiss.

*First*, the Court lacks jurisdiction because Plaintiffs do not allege a concrete and particularized injury in fact.  Plaintiffs are not actual voters who claim they have been unable to register and vote—instead, they are organizations that claim that Idaho's streamlining of voter ID and creation of free ID will make it harder for them to register voters and enlist support for their political causes.  That is not good enough for associational standing because neither Plaintiff identifies any member injured by these laws.  And it is not good enough for organizational standing because a speculative assertion that the burden of educating voters about new laws will drain their resources is not an injury.  It is a generalized grievance that Article III forbids.

*Second*, the Court lacks jurisdiction because Plaintiffs' claims are not redressable against the Secretary of State.  The Secretary of State lacks authority over actual voter registrations, which county clerks handle.  And the Secretary of State has no authority over the creation and issuance of free voter ID, which is handled by the Department of Motor Vehicles.  That also gives the Secretary Eleventh Amendment immunity, since he has no power to enforce that law.

*Third*, Plaintiffs' facial challenge is not ripe. These laws are not yet in effect and Plaintiffs' allegations of present (as well as future) harm are pure speculation.

And *fourth*, there is no personal jurisdiction over the Secretary of State because Plaintiffs did not properly serve the Complaint.  Rule 4(j) demands service of a state official in his official capacity requires service via the Governor or the Attorney General.  Plaintiffs just served Secretary McGrane personally, which is not enough.

Federal courts should not lightly intervene to disturb state election procedures, *see Southwest Voter Registration Education Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc), especially under the "extremely high bar" of a disfavored facial challenge. *Does 1-134 v. Wasden*, No. 1:16-CV-00429-DCN, 2018 WL 2275220, at *4 (D. Idaho May 17, 2018) (Nye, J.).  This inchoate pleading does not offer a "Case or Controversy" to decide such a challenge, but rather an open-ended request for this Court to act as a super-legislature over the particulars of Idaho election law.  The Court should decline the invitation and dismiss for lack of jurisdiction.

BACKGROUND

Since 2010, Idaho has required voter identification when casting a ballot.  *See* 2010 Idaho Sess. Laws 634.  Idaho law requires all voters to identify themselves at the polls with either a photo identification card or an affidavit in lieu of personal identification.  *See* Idaho Code §§ 34-1113 to -1114.  The constitutionality of that law has never been challenged.  During the 2023 legislative session, Idaho enacted two new statutes—H.B. 124 and H.B. 340—that will simplify these voter ID requirements and create a new, free form of voter ID.  Plaintiffs challenge those laws on their face.

**A.     Idaho simplifies Voter ID law and creates new free Voter ID.**

Existing Idaho law already requires voters to prove their identity and residence.[1]  To register to vote by mail, current Idaho law requires proof of residence via photo ID, a copy of a current utility bill, bank statement, government check, paycheck, or other government document showing the name and address of the voter.  Idaho Code § 34-410.  In contrast, to register to vote on election day, current law requires proof of residence with an Idaho-issued driver's license or ID card, a photo ID with an address, or a student ID from Idaho with a student fee statement providing an address.  *Id.* § 34-408A.  Then, regardless of the method of registration, Idaho law requires voters to prove identity at the time of voting in the form of an Idaho driver's license, passport, tribal ID, concealed carry permit, or student ID.  *Id.* § 34-

---

[1] For all voting purposes, "residence" is "the principal or primary home or place of abode of a person.  Principal or primary home or place of abode is that home or place in which his habitation is fixed and to which a person, whenever he is absent, has the present intention of returning after a departure or absence therefrom, regardless of the duration of absence."  Idaho Code § 34-107(1).

1113.  Or, if none of those forms of ID are available, the voter may submit proof of identity via personal affidavit.  *Id.* § 34-1114.  Idaho's statewide voter database reflects that in the last general election, 98.8% of voters used a driver's license as ID, while *less than a tenth of a percent* used student ID (a total of 104 persons in the electronic pollbook database).  *See* McGrane Decl. Ex. A.

The new amendments to Idaho law will both simplify these methods of proving identity and residence and create a new, widely available free voter ID.  Rather than imposing different proof requirements depending on when a voter registers, the new laws will require the same standard of proof for all registration methods.  H.B. 340, 67th Leg., 1st Reg. Sess. (Idaho 2023), § 5, Idaho Code § 34-411.  A registrant can prove both their identity and their residence with an Idaho driver's license, tribal ID, concealed carry permit, or the new free voter ID, which is available for anyone who has not had a driver's license in the last six months.  *Id.* §§ 5, 8, Idaho Code §§ 34-411(3)–(4), 49-2444(22).  Alternatively, if a registrant decides to prove their identity with a U.S. passport or other government ID, they can then prove their residence with one of several other documents (including student enrollment papers).  *Id.* § 5, Idaho Code § 34-411(4)(ix).  Finally, to cast a ballot, the new laws allow voters to prove their identity either through the methods of proving identity at registration or, as under current law, with a personal affidavit.  H.B. 124, 67th Leg., 1st Reg. Sess. (Idaho 2023); Idaho Code § 34-1114.  Thus, while the new law does not recognize student ID as voter ID, any of the 104 persons who used it before can register and vote with a free state ID or vote with a personal affidavit.

These new laws are not yet effective. The changes to voter registration go into effect this summer, in July 2023, and the changes to proof of ID at the ballot box become operative on January 1, 2024. H.B. 340; H.B. 124.

### B.     Plaintiff organizations challenge Idaho Voter ID law.

Litigation followed soon after the passage of these laws. In parallel filings co-ordinated with joint press coverage,[2] one group of lawyers filed this facial challenge to Idaho law under the Federal Constitution, while a second group of lawyers filed an action asserting substantially similar claims under the State Constitution. *See Babe Vote v. McGrane*, Case No. CV01-23-04534 (4th Jud. Dist. Ct. Idaho) (Complaint filed Mar. 16, 2023). Both actions characterize Idaho's streamlining of the registration process and creation of a new free voter ID as a threat to democracy. In this case, the two Plaintiff organizations say these laws harm their efforts to register voters to support their political causes.

The two Plaintiffs here both allege age discrimination, but on opposite ends of the spectrum. March for Our Lives Idaho ("MFOL Idaho") says that the disallowance of student ID to prove identity harms young voters who move to the State for school, even though they are eligible for free voter ID. Dkt. 20 ¶¶ 11–12. And the Idaho Alliance for Retired Americans (the "Alliance") says the provision of free voter ID harms old voters because it is not available to those who have had a driver's license in the last six months. Dkt. 20 ¶¶ 13–15.

---

[2] Clark Corbin, *Babe Vote, March for Our Lives Idaho file suit over law eliminating student IDs for voting*, IDAHO CAPITAL SUN (Mar. 17, 2023, 3:23 PM), https://ti-nyurl.com/6m3xbx69.

Plaintiffs served this action personally on Secretary McGrane.  *See* McGrane Decl. ¶ 2.  The State objected that this was not good service of a state official under Rule 4(j), and it offered to accept service in exchange for a modest extension of time to respond.  Plaintiffs declined.  The State moves to dismiss for lack of jurisdiction.

## LEGAL STANDARD

"Without jurisdiction the court cannot proceed at all in any cause."  *Ex parte McCardle*, 74 U.S. 506, 514 (1868).  Defendant has raised multiple threshold issues going to this Court's jurisdiction, any one of which is sufficient "for denying audience to a case on the merits."  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citation omitted).  The court cannot adjudicate any matter without subject matter jurisdiction, which includes Article III standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  It cannot adjudicate a lawsuit by a citizen against a State without its consent.  U.S. CONST. amend. XI.  And the court cannot adjudicate a suit against a party without establishing personal jurisdiction consistent with the due process clause.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).  And in determining its jurisdiction, the court may consider "the complaint and any other particularized allegations of fact[] in affidavits."  *Table Bluff Rsrv. (Wiyot Tribe) v. Phillip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001).

## ARGUMENT

## I.   Plaintiffs lack Article III standing and the Court lacks jurisdiction.

Federal courts, as courts of limited jurisdiction, cannot "issue advisory opinions nor ... declare rights in hypothetical cases," but can only "adjudicate live cases or

controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  The doctrine of standing "gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (cleaned up).  "No principle is more fundamental to the judiciary's proper role in our system of government" than this limitation.  *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341, (2006); *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1998) (citation omitted); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016).

To establish Article III standing, a plaintiff must show:  "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000) (citing *Lujan,* 504 U.S. at 560–61). Plaintiffs fail this test on many fronts: they have not shown an injury, that their purported harm can be redressed by a decision against Secretary McGrane, or that their claims are ripe.  The Court should dismiss for lack of standing.

### A.    Plaintiffs have no injury in fact.

Injury in fact is fundamental to standing and thus to jurisdiction.  The injury requirement recognizes that a plaintiff must have a "personal stake in the outcome," *Baker v. Carr*, 369 U.S. 186, 204 (1962), which is essential "[t]o ensure that the

Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (internal quotation marks and citation omitted). That "personal stake" is distinct from a "generally available grievance about government." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (citation omitted). It ensures that courts "act as judges, and do not engage in policymaking properly left to elected representatives." *Gill*, 138 S. Ct. at 1923.

To establish an injury, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "Concrete" is "meant to convey the usual meaning of the term—'real,' and not 'abstract.'" *Id*. Likewise, "particularized" means "the injury must affect the plaintiff in a personal and individual way." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). And the "imminence" aspect of injury ensures "the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), or there is a "'substantial risk' that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (cleaned up).

Plaintiffs do not meet these requirements. They do not allege any injury to their members to confer associational standing. And they do not allege any injury to themselves that can support organizational standing. Instead, they present only an inchoate, political complaint that they would have preferred to structure those laws differently. That generalized grievance is not susceptible to federal adjudication.

### 1.    *Plaintiffs lack an injury for associational standing.*

This action is not a challenge by an eligible voter alleging that Idaho's election amendments will prevent them from voting.  That is unsurprising, because Idaho's new laws merely simplify Idaho's pre-existing requirements that voters prove their residence and identity to register and vote.  The new laws make those requirements easier to follow by streamlining the methods of proving residence and identity.  If anything, they make it easier to vote by creating a new free form of state-issued identification that can be used for voting.  These changes injure no-one.

Least of all Plaintiffs.  Even if there were some theory of harm to other eligible voters, it is not at issue here because neither Plaintiff has alleged any basis to sue "as the representative of its members."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342–43 (1977).  Associational standing requires an organization to "allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit."  *Id.*

Critically, plaintiffs seeking to establish associational standing must "identify members who have suffered the requisite harm."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).  They must "include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association," *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 555 (1996), and must identify this injured member with specific allegations. *Assoc. Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.,* 713

F.3d 1187, 1194 (9th Cir. 2013).  Nor is it enough to say that the odds suggest someone must have been injured: "statistical probabilities" do not override the strict requirement of identifying an injured member.  *Summers,* 555 U.S. at 498.

Plaintiffs do not come close to this threshold requirement.  MFOL Idaho does not even allege that it *has* any members.  Instead, it pleads harm to its "constituents"—that is, the people it wants to reach.  Dkt. 20 ¶ 12.  But MFOL Idaho's desire to persuade those unidentified individuals, and its insistence that many of them "are concerned about gun violence," does not give it any authority to represent their interests in federal court.  *Id.* ¶ 11.  MFOL Idaho thus has not alleged any basis to sue on behalf of the vanishingly small group of voters who used student ID in the last election—104 in total, less than a tenth of a percent.

The Alliance fares no better.  It purports to assert claims "on behalf of" its "11,407 members, made up of retirees from public and private sector unions, community organizations, and individual activists." *Id.* ¶ 13.  Yet it does not identify a single person who is actually affected by the changes in Idaho law among those thousands of members referenced.  The failure to name any member affected by these laws is fatal to associational standing.  *Summers,* 555 U.S. at 498.

At most, the Alliance suggests a theory of possible harm: that its members who are new to Idaho and do not wish to renew their driver's license will be ineligible for a free ID and will then suffer the harm of paying a fee for ID.  Dkt. 20 ¶ 14.  But this theory fails on its own terms.  If, as the Alliance claims, the problem is that some people must pay a fee for voter ID, then that problem is even greater under the

current law that Plaintiffs say should remain in place.  That law does not provide free state-issued voter ID to *anyone*.  And still, almost 99% of voters already use paid drivers' licenses issued by the State to vote.  *See* McGrane Decl. Ex. A.  Plaintiffs thus attempt in vain to wring an injury from the fact that Idaho has, for the first time, provided free voter ID to any eligible voter who doesn't have a driver's license.

Even more tellingly, the Alliance does not identify even one such affected member who has experienced this speculative injury.  That is for good reason: no such person exists.  The Alliance asks the Court to assume it has members who do not currently have a valid driver's license and do not wish to drive any more as of April 17, 2023 (the date of their Second Amended Complaint).  But when H.B. 340 takes effect July 1, 2023, the DMV will provide free ID to anyone 18 or older "who has not possessed a current driver's license in the preceding six (6) months" who needs ID for voter registration.  H.B. 340 § 8, Idaho Code § 49-2444(22).  So any of these hypothetical individuals will be eligible for free voter ID no later than October 17, 2023, well in advance of any election after H.B. 124 becomes effective.  The Alliance's speculation about unidentified members does not create a concrete injury.

Even apart from Plaintiffs failing to name any member harmed, they have not satisfied the requirement for associational standing that the interests the organization seeks to protect are "germane to the organization's purpose."  *Hunt,* 432 U.S. at 343.  For example, that requirement is met for a landlords association challenging a rent control ordinance, an environmental group challenging a system affecting recreational river access, or a union seeking to protect benefits for laid off member workers.

*Pennell v. City of San Jose,* 485 U.S. 1, 7 n.3 (1988); *Friends of the Earth, Inc.,* 528 U.S. at 181–87; *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. V. Brock,* 477 U.S. 274, 282–90 (1986).  But Plaintiffs have missions that are unrelated to the claims they assert: MFOL Idaho seeks to "end gun violence" and Alliance seeks to advance the "social and economic justice" of retired people.  *See* Dkt. 20 ¶¶ 11, 13.  Idaho's voting requirements do not impact these organizations' missions any more than they affect anyone's advocacy for any political cause.

Plaintiffs assume, based on purported demographic associations with specific policies, that but for these laws, future voting would sway toward their partisan causes.  *See Id.* ¶¶ 50, 56.  But speculation about how voters of different ages might affect the composition of the Legislature and the laws it enacts is a far cry from pleading facts to establish a distinct and specific injury caused by the laws challenged.  Plaintiffs lack the critical nexus between Plaintiffs' mission and the challenged laws, and so they lack associational standing.

## 2.  *Plaintiffs lack an injury for organizational standing.*

Plaintiffs cannot establish organizational standing, either.  Showing an injury in fact under that theory requires harm to the organization, such as: "(1) frustration of its organizational mission; and (2) diversion of its resources" to mitigate the effects of the challenged action.  *Smith v. Pac. Props. And Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (citation omitted).  An organizational plaintiff must allege "more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  Rather, there must be

"*concrete* and *demonstrable* injury to the organization's activities—with the consequent drain on the organization's resources." *Id.* (emphasis added). Plaintiffs do not allege such injury.

MFOL Idaho says Idaho's new laws "make it harder" for eligible voters with only a student ID to register and vote and "harder for MFOL Idaho to successfully register and turn them out to vote." Dkt. 20 ¶ 12. But allowing this attenuated theory of standing would confer standing on *anyone* to challenge election laws: any organization could always allege that a modified election procedure will make it harder to turn out supporters of "abstract social interests." *Havens Realty Corp.*, 455 U.S. at 379. That matters here because MFOL Idaho's voter registration activities appear to be, at best, ancillary to its mission—as it explains, it "advocate[s] for laws and policies to end gun violence" before the legislature, but "[b]ecause its advocacy in front of the legislature is frequently ignored," it "also conducts voter registration and voter turnout activities." Dkt. 20 ¶ 11. That is just not good enough.

Even more fundamentally, MFOL Idaho fails to explain how this is an injury at all. It asserts that these laws "make it harder" for people with only a student ID to vote, *Id.* ¶ 12, but that is belied by the law itself, which allows any eligible student voter without a driver's license to get a free voter ID from the State. H.B. 340 § 8, Idaho Code § 49-2444(22). MFOL Idaho makes conclusory assertions that educating voters about registration is "onerous" and that the new laws will cause "confusion," Dkt. 20 ¶ 12, but it does not explain how this is so for laws that simplify the registration and voting process and that replace one form of free ID (student ID) with another

(state voter ID).  Finally, it says that this unspecified "confusion" will cause "MFOL Idaho to divert resources towards voter education from other programming to ameliorate the law's disenfranchising and vote suppressing impacts." *Id.*  But apart from its failure to explain how a law that gives a free ID to eligible voters is "disenfranchising," it fails to adequately allege "diverted resources," *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010), having not identified any "specific projects that it had to put on hold or otherwise curtail in order to respond to the challenged laws." *Tex. State LULAC v. Elfant*, 52 F.4th 248, 253 (5th Cir. 2022) (cleaned up).  Especially where student ID has been so rarely used under current law, MFOL Idaho has not alleged any concrete or particularized harm.

The Alliance's attempt to show organizational standing meets the same fate. Its claim that the new Idaho laws "threaten[] the electoral prospects of the candidates the Alliance endorses" is a generalized claim of harm that could be made by anyone. Dkt. 20 ¶ 15.  It says the new laws make it "more difficult for the Alliance and its members to associate to effectively further their shared political goals," *id.*, but it does not explain how, and its theory of injury to retired residents is defective for the reasons above.  Finally, its claim about diverting resources from other activities to educating members about the new law has the same problems as MFOL Idaho.  *Id.* This too is insufficient to show organizational standing.

### B.   Plaintiffs' claims are not redressable against Defendant.

Standing requires not just an injury, but an injury that may be redressed through relief against the Defendant.  *Friends of the Earth, Inc.,* 528 U.S. at 180–81.

Plaintiffs have not met that requirement here because an injunction against Secretary McGrane declaring these laws void would provide only partial relief at best. This is because Secretary McGrane has only limited authority over voter registration and no authority over the creation or issuance of voter IDs.

### 1.    *County clerks handle voter registration.*

While the Secretary of State is the State's chief election officer, he has only limited authority over the conduct of voter registration in Idaho. He is responsible to issue "directives" to county election officials, *see* Idaho Code § 34-202, and to promulgate a new voter registration form, *see* H.B. 340 § 5, Idaho Code § 34-411(1), but Idaho law makes county clerks the primary responsible officials for accepting voter registrations and overseeing voter requirements in elections. Idaho Code §§ 34-206, 208–209. The Secretary of State has no direct enforcement authority over county clerks in these duties—he may only file an action for mandamus against a clerk who fails to comply with a directive, and even then, the clerk may defend on the ground that the directive "is unlawful." Idaho Code § 34-213(1); *see also Mi Familia Vota v. Abbott*, 977 F.3d 461, 468–69 (5th Cir. 2020).

Thus, while relief with respect to Secretary McGrane might shape policies within the control of his office, without joining a county clerk, it would not ensure that any registrations would ultimately be accepted. And the fact that Plaintiffs have not joined any county clerks further underscores the speculative and premature nature of their claims. Not only have they failed to name a single individual who is or will be affected by those laws, they fail to allege that any county clerk has prevented

them from registering to vote through the free ID provided by the State.  They have neither a specific harm nor an achievable remedy; they simply wish to rewrite the laws that Idaho's elected representatives enacted.  Article III forbids this.

### 2.    *The DMV handles Voter ID.*

Redressability poses an even bigger hurdle for Plaintiffs' claims concerning the new free state ID provided by H.B. 340, since Secretary McGrane has no authority over those matters at all.  The provisions for new free state ID will be codified in title 49, which is administered by the Department of Motor Vehicles, not title 34, which is administered by the Secretary of State.  *See* H.B. 340 § 8, Idaho Code § 49-2444(22).  On a practical level, Idaho residents go to the DMV to get their driver's license or other voter ID, not to the Secretary of State.  And so an injunction telling the Secretary of State to change those ID requirements would be ineffectual.

That lack of redressability also means Secretary McGrane has Eleventh Amendment immunity.  Under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may circumvent a state's Eleventh Amendment immunity by suing a state officer in his official capacity for prospective relief, but only if the officer is "clothed with some duty in regard to the enforcement of the laws of the state, and … threaten[s] ... to enforce against parties affected [by] an unconstitutional act."  *Id.* at 155–56.  That demands a "special relation" between the Defendant and enforcement of the law at issue, *id.* at 157, which "must be fairly direct."  *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir.1992).  That "special relation" is wholly absent here: the Secretary of State does not administer the DMV's provision of voter ID under H.B. 340 and has not

threatened to do so.  Secretary McGrane is not a proper defendant to Plaintiffs' claims about Idaho's free voter ID, which are barred by the Eleventh Amendment.

### C.    Plaintiffs' claims are unripe.

These defects in Plaintiffs' standing are closely tied to defects in ripeness, which is their burden to prove.  *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).  "[R]ipeness doctrine reflects both constitutional and prudential considerations," *id.* at 1123, and it exists to turn away suits like this one by "prevent[ing] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (citation omitted).  "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).  To determine prudential ripeness, courts consider two factors: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties from the withholding of court consideration.  *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010).

Plaintiffs cannot meet these standards.  The fitness prong requires courts to consider, among other things, "whether the action has a direct and immediate effect on the complaining parties … and whether the action requires immediate compliance with its terms."  *Ass'n of Am. Med. Colls. v. United States,* 217 F.3d 770, 780 (9th Cir. 2000) (cleaned up).  But there is no direct and immediate effect on Plaintiffs because the new laws are not even operative yet.  And it is pure speculation that when these

laws do come into effect—H.B. 340 in July and H.B. 124 six months later—they will cause any of the purported harms Plaintiffs predict.  Plaintiffs do not identify anyone now who has been prevented from registering to vote, and they fail to show that any of their members will be prevented under the new form of free ID established by H.B. 340.  Far from requiring "immediate compliance," these laws become effective over a period of time and will govern a long voter registration period in advance of the November 2024 election in which voters have many different avenues to prove their identity and residence.  This case does not provide a definite dispute to adjudicate.

## II.   The Court lacks personal jurisdiction over the Secretary of State.

Finally, the Court should dismiss because service was improper, depriving the Court of personal jurisdiction.  *See Direct Mail Specialists, Inc. v. Eclat Comput. Techs., Inc.,* 840 F.2d 685, 688 (9th Cir. 1988).  The Court lacks personal jurisdiction because Plaintiffs served the Complaint personally on Secretary McGrane, rather than on the Governor or the Attorney General as required by Rule 4(j).  The Rule 4(j) service requirement flows from the fact that this action is, fundamentally, an action against the State challenging the constitutionality of its laws.  In the very first paragraph of their Complaint, Plaintiffs allege that H.B. 124 and H.B. 340 "violate federal law in at least three ways" and "should be declared invalid and permanently enjoined."  Dkt. 20 ¶ 1.  And they accuse Idaho lawmakers of "a major escalation of an ongoing effort … to suppress growing political activism by young Idahoans."  *Id.* ¶ 3. So while Plaintiffs have sued Secretary McGrane in his official capacity to skirt the

Eleventh Amendment, the Court should regard their case based on what they seek: a declaration and injunction that Idaho law is void on its face.  Dkt. 20 at 28–29.

In such circumstances where a state is "subject to suit," Rule 4(j) dictates how the complaint must be served.  The phrase "subject to suit" is intended "as a reminder that various restrictions have been imposed on the ability to institute litigation against state governments and instrumentalities in the federal courts," including the Eleventh Amendment.  Charles Alan Wright & Arthur R. Miller, *4B Federal Practice and Procedure* § 1110 (4th ed. 2023).  Thus, if a defendant is "sued in his official capacity" to circumvent the Eleventh Amendment, service "must be made under Rule 4(j)," since "suing a state official in his official capacity is ultimately a suit against the state."  *Libertarian Party v. Dardenne*, No. 08-582-JJB, 2009 WL 790149, at *5 (M.D. La. Mar. 24, 2009), *aff'd*, 595 F.3d 215 (5th Cir. 2010).  Rule 4(j) requires either "delivering a copy of the summons and of the complaint to [the state's] chief executive officer" or serving it "in the manner prescribed by that state's law for serving a summons or like process on such a defendant."  Fed. R. Civ. P. 4(j).  For Idaho, that means either delivering a copy to the Governor (the state's chief executive officer) or serving two copies on the Attorney General (the person authorized to accept service under Idaho law).  *See* Idaho R. Civ. P. 4(d)(4)(A).  But Plaintiffs did neither—they just served Secretary McGrane personally.  *See* McGrane Decl. ¶ 2.

Courts have rejected the notion that personal service of an official under Rule 4(e) is proper for official capacity lawsuits.  In *Moore v. Hosemann*, 591 F.3d 741 (5th Cir. 2009), the Fifth Circuit chose to "join" the "number of other courts" that "have

held that state officers sued in their official capacities are subject to service under rule 4(j)." *Id.* at 746–47.  This interpretation follows from the Advisory Committee Note to Rule 4, which explains that the reason for shielding the federal government from waiver-of-service provisions also applies to its "'agencies, corporations, and *officers*' and similarly 'to other governments and entities subject to *service under subdivision (j).*'" *Id.* at 746 (emphasis added) (quoting Fed. R. Civ. P. 4, 1993 Advisory Comm. Note).   Thus, "the most reasonable reading of rule 4 affords state officers facing official capacity suits the same consideration given to federal officers in the same position." *Id.* (distinguishing *Echevarria–Gonzalez v. Gonzalez–Chapel,* 849 F.2d 24, 29–30 (1st Cir. 1988)).  Many other decisions are in accord and demand service of state officials under Rule 4(j).[3]  Plaintiffs thus failed to properly serve the Complaint and the Court lacks personal jurisdiction.

## CONCLUSION

The Court should dismiss this action for lack of jurisdiction.

---

[3] *McCaslin v. Cornhusker State Indus.*, 952 F. Supp. 652, 658 (D. Neb. 1996); *Libertarian Party v. Dardenne*, No. 08-582-JJB, 2009 WL 790149, at *5 (M.D. La. Mar. 24, 2009), *aff'd*, 595 F.3d 215 (5th Cir. 2010); *Mack v. Fox*, No. 1:07CV760, 2008 WL 4832995, at *3 (M.D. N.C. Nov. 4, 2008), *report and recommendation adopted*, 2008 WL 7674789 (M.D. N.C. Dec. 10, 2008).

DATED: May 17, 2023

Respectfully submitted,

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

/s/ *Lincoln Davis Wilson*
LINCOLN DAVIS WILSON (ISB #11860)
Chief of Civil Litigation and
Constitutional Defense
ANDREA H. NIELSEN (ISB #7763)
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
lincoln.wilson@ag.idaho.gov
andrea.nielsen@ag.idaho.gov

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Terri R. Pickens
terri@pickenslawboise.com

Elisabeth Frost
efrost@elias.law
David R. Fox
dfox@elias.law
Justin Baxenberg
jbaxonberg@elias.law
Daniel Cohen
dcohen@elias.law
Qizhou Ge
age@elias.law

*Attorneys for Plaintiffs*

By: ___/s/ Lincoln Davis Wilson___
        LINCOLN DAVIS WILSON
        Chief, Civil Litigation and
        Constitutional Defense
        ANDREA H. NIELSEN
        Deputy Attorney General