Terri R. Pickens (ISB #5828)
**PICKENS LAW, P.A.**
398 S. 9th Street, Suite 240
Boise, ID 83702
terri@pickenslawboise.com
Tel: (208) 954-5090
Fax: (208) 954-5099

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
Tel: (206) 656-0177

Elisabeth Frost*
David R. Fox*
Justin Baxenberg*
Daniel Cohen*
Qizhou Ge*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
efrost@elias.law
dfox@elias.law
jbaxenberg@elias.law
dcohen@elias.law
age@elias.law
Tel: (202) 968-4490

*Attorneys for Plaintiffs*
*Admitted pro hac vice

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **MARCH FOR OUR LIVES IDAHO** and **IDAHO ALLIANCE FOR RETIRED AMERICANS**, | Case No.: 1:23-cv-00107-AKB |
| Plaintiffs, | |
| v. | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **PHIL MCGRANE**, in his official capacity as Idaho Secretary of State, | |
| Defendant. | |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

LEGAL STANDARD........................................................................................................ 4

ARGUMENT .................................................................................................................... 5

   I.    Plaintiffs have standing to assert their poll tax claim................................... 5

     A.  House Bill 340 injures Plaintiffs as organizations. ................................ 6

     B.  House Bill 340 injures Plaintiffs' members and constituents. ................ 8

     C.  Traceability and redressability ............................................................ 11

  II.    House Bill 340 violates the Twenty-Fourth Amendment and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution as an unconstitutional poll tax................................................................... 12

     A.  House Bill 340 requires payment of a government fee in order to vote. ........................ 13

     B.  House Bill 340 requires payment of a fee directly to the state. ..................... 16

CONCLUSION............................................................................................................... 17

CERTIFICATE OF SERVICE ....................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Unites for Kids v. Rousseau,*
  985 F.3d 1075 (9th Cir. 2021) ....................................................................9, 10

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)......................................................................................4

*Crawford v. Marion Cnty. Election Bd.,*
  472 F.3d 949 (7th Cir. 2007) ........................................................................6

*Crawford v. Marion Cnty. Election Bd.,*
  553 U.S. 181 (2008)......................................................................2, 13, 16, 17

*E. Bay Sanctuary Covenant v. Biden,*
  993 F.3d 640 (9th Cir. 2021) ........................................................................6

*E. Bay Sanctuary Covenant v. Trump,*
  932 F.3d 742 (9th Cir. 2018) ......................................................................5, 6

*Gonzalez v. Arizona,*
  677 F.3d 383 (9th Cir. 2012) ...................................................................16, 17

*Harman v. Forssenius,*
  380 U.S. 528 (1965)..................................................................................13, 16

*Harper v. Va. Bd. of Elections,*
  383 U.S. 663 (1966)..................................................................................13, 16

*Hunt v. Wash. State Apple Advert. Comm'n,*
  432 U.S. 333 (1977)......................................................................................9

*Mecinas v. Hobbs,*
  30 F.4th 890 (9th Cir. 2022) .........................................................5, 6, 11, 12

*Nat'l Council of La Raza v. Cegavske,*
  800 F.3d 1032 (9th Cir. 2015) ......................................................................6

*Or. Advoc. Ctr. v. Mink,*
  322 F.3d 1101 (9th Cir. 2003) ......................................................................9

*Renee v. Duncan,*
  686 F.3d 1002 (9th Cir. 2012) ......................................................................12

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*
  809 F.2d 626 (9th Cir. 1987) ........................................................................4

**Statutes**

Ariz. Rev. Stat. Ann. § 16-579(A)(1) ....................................................................17

Ariz. Rev. Stat. Ann. § 16-579(A)(1)(b) ................................................................17

Idaho Code § 34–411(3) ....................................................................................1, 14

Idaho Code § 34-202 ..............................................................................................12

Idaho Code § 34-407 ................................................................................................3

Idaho Code § 34-408A ..............................................................................................3

Idaho Code § 34-410(6) (2022) ................................................................................2

Idaho Code § 34-411 ...........................................................................................2, 3

Idaho Code § 49–2444(22) ................................................................................1, 14

Idaho Code § 49-119(12) ..........................................................................................4

**Other Authorities**

2023 Idaho H.B. 340, § 5 ...............................................................................1, 2, 3, 14

2023 Idaho H.B. 340, § 8 ...................................................................................1, 3, 14

Fed. R. Civ. P. 56(a) ................................................................................................4

## INTRODUCTION

The Twenty-Fourth Amendment to the U.S. Constitution provides that the right to vote in federal elections "shall not be denied or abridged" by a state for "failure to pay any poll tax or other tax." The Equal Protection Clause of the Fourteenth Amendment also prevents states from making "the affluence of the voter or payment of any fee an electoral standard." These provisions categorically prohibit a state from making access to voting contingent on paying a tax or fee. Any provision that violates this prohibition is an unconstitutional poll tax, and must be invalidated.

House Bill 340 squarely violates these constitutional provisions. It requires all voters to produce one of only four approved forms of photo identification in order to register to vote, each of which generally requires payment of a government fee. 2023 Idaho H.B. 340, § 5 (codified at Idaho Code § 34–411(3)). While House Bill 340 provides a no-fee identification card for some voters, it imposes strict eligibility requirements for that no-fee identification card, which exclude large swaths of eligible voters, including those with an active driver's license that expires within six months before an election who do not intend to renew, voters who move to Idaho shortly before election day and have not yet surrendered their still-valid out-of-state driver's license in exchange for an Idaho driver's license, and voters who turn eighteen shortly before an election and cannot obtain an identification card in time for election day. 2023 Idaho H.B. 340, § 8 (codified at Idaho Code § 49–2444(22)).

The material facts are not in dispute. Secretary McGrane *admits* that there are instances where eligible voters who need the no-fee identification card to vote would not be eligible for one due to these requirements. Pls.' Concise Statement of Material Facts ("CSMF") ¶¶ 30, 37. House Bill 340 thus forces these eligible voters to pay Idaho or the federal government for an identification card if they wish to vote and Plaintiffs move for summary judgment on their claim that the law is accordingly an unconstitutional poll-tax. This claim can be resolved as a matter of

1

law with a straightforward application of the legal standards applicable to such claims under the Twenty-Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment.

Conditioning the right to vote on the payment of a fee is an invidious discrimination. That the number of eligible Idaho citizens who will be impacted is not likely to be overwhelming is of no moment. As the Supreme Court has previously noted, "[t]he fact that most voters already possess a valid driver's license, or some other form of acceptable identification, would not save [a] statute . . . if the State required voters to pay a tax or a fee to obtain a new photo identification." *Crawford*, 553 U.S. at 198. And Plaintiffs March For Our Lives Idaho ("MFOL Idaho") and the Idaho Alliance for Retired Americans (the "Alliance") have standing to bring this claim both as organizations with missions that will suffer as a result as a result of House Bill 340 and on behalf of their members and constituents, some of whom are highly likely to be among the number of Idahoans who will unconstitutionally be forced to pay a poll tax as a result of House Bill 340. The Court should grant partial summary judgment in Plaintiffs' favor on their claim that House Bill 340 is an unconstitutional poll tax.

## BACKGROUND

House Bill 340, which became effective on July 1, 2023, requires for the first time that all new voter registrants provide one of just a handful of types of photo identification. 2023 Idaho H.B. 340, § 5 (codified at Idaho Code § 34-411). Each of those forms of identification is generally available only after payment of a government fee. CSMF ¶¶ 8, 10–13.

Before House Bill 340, prospective voters could register by mail by providing either "current and valid photo identification" or "[a] copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter." Idaho Code § 34-410(6) (2022). They could register on election day by providing either (1) an Idaho driver's license or identification card, (2) "any document which contains a valid

address in the precinct together with [any] picture identification card," or (3) a current university identification card and a fee statement showing an address in the precinct. *Id.* § 34-408A (2022). And they could register in person before election day without any identification requirement at all. *Id.* § 34-407 (2022).

House Bill 340 eliminated these options and mandated that everyone registering to vote in Idaho—whether by mail or in person, on election day or before—must show one of four specified forms of photo identification: 1) a current Idaho driver's license or identification card; 2) a current passport or other U.S. government identification card; 3) a current tribal identification card; or 4) a current Idaho license or enhanced license to carry concealed weapons. 2023 H.B. 340 § 5 (codified at Idaho Code § 34-411). A prospective voter registering with a passport or other U.S. government identification card must also provide an acceptable document displaying their name and current Idaho physical address as proof of residence. *Id.* House Bill 340's list of acceptable forms of identification notably excludes student identification cards and out-of-state driver's licenses and identification cards. And voters without one of the accepted forms of identification cannot register at all without paying a government fee for acceptable identification. *Id.*

House Bill 340 provides for only one other option—a four year no-fee identification card for voting—but it is only available for a very narrow set of Idaho voters. Specifically, no-fee identification cards for voting are *only* available for persons who (1) are eighteen years old or older, and (2) have not possessed a current driver's license in the preceding six months. 2023 Idaho H.B. 340, § 8. Individuals who do not meet that criteria cannot—as the Secretary concedes, CSMF ¶¶ 30, 37—obtain a no-fee identification card for voting.

As a result, some number of persons who are eligible to register to vote in Idaho will only be able to do so if they pay for a government identification card, which House Bill 340 makes a

condition precedent to register to vote. This includes voters who move to Idaho shortly before election day and have not yet surrendered their still-valid out-of-state driver's license,[1] voters who no longer drive whose license is expiring in the six months prior to the election, and young voters who turn eighteen shortly before an election and are unable to procure the supporting materials necessary to obtain an identification card (which are similar to required documents to obtain a driver's license) or travel to and present them to an issuing authority before election day. *Id.* ¶¶ 19, 28. House Bill 340 requires all these eligible voters to pay for an identification card if they wish to register to vote.

## LEGAL STANDARD

Summary judgment must be entered if a "movant shows that there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that "might affect the outcome of the suit." *Id.* at 248. Any dispute over "irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The "mere existence of a scintilla of evidence in support" of the non-moving party's position is insufficient to deny summary judgment, and "there must be evidence on which the [factfinder] could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

---

[1] Drivers are not required to obtain an Idaho driver's license until ninety days after residing in the state. Idaho Code § 49-119(12). Idaho drivers who are new to the state and otherwise eligible to vote, therefore, may have an out-of-state driver's license that they are not yet required to surrender.

**ARGUMENT**

It is undisputed that House Bill 340 requires some voters—who do not possess an acceptable form of identification and do not qualify for a no-fee identification card—to pay a fee for government identification in order to register to vote. The ability to pay that government fee is not germane to voter qualifications, and conditioning the right to vote on payment of a fee is an unconstitutional poll tax in violation of the Twenty-Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

Plaintiffs have standing to assert their poll tax claim both as organizations and on behalf of their members and constituents who will be forced to pay a poll tax as a result of House Bill 340 if they want to exercise their right to vote. The law detracts from Plaintiffs' missions and requires them to divert resources from other mission-critical activities towards educating members and constituents about the requirements of House Bill 340 and helping them obtain acceptable identification. The injuries caused by House Bill 340 are traceable to Secretary McGrane's implementation of the bill and can be redressed if Secretary McGrane issues a binding directive to county clerks precluding enforcement of House Bill 340.

## I.    Plaintiffs have standing to assert their poll tax claim.

Plaintiffs easily clear the threshold for Article III standing: (1) they have suffered and will continue to suffer a "concrete and particularized" injury; (2) those injuries are "fairly traceable" to Defendant's conduct; and (3) that injury is "likely to be redressed by a favorable judicial decision." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 763 (9th Cir. 2018) ("*EBSC I*") (citations omitted). Plaintiffs satisfy the injury-in-fact requirement because the poll tax levied by House Bill 340 will injure them and their members and constituents by making it harder for Idaho voters to register and vote. The traceability and redressability requirements for standing overlap and are "two facets of a single causation requirement." *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir.

2022) (citations omitted). This Court has already determined that the redressability requirement is satisfied "[b]ecause Idaho law mandates that the Secretary issue binding directives on all aspects of election law to county clerks and requires them to follow those directives." Slip Op. at 7, ECF No. 47. The same analysis controls with respect to the traceability requirement. *See Mecinas*, 30 F.4th at 899-900.

A.        **House Bill 340 injures Plaintiffs as organizations.**

House Bill 340 injures Plaintiffs as organizations by imposing a poll tax on the voters they organize and turn out and making it harder for them to register and vote, thus requiring Plaintiffs to divert their resources away from other activities and towards ensuring that those voters have the required identification. "Organizations can demonstrate organizational standing by showing that the challenged practices have perceptibly impaired their ability to provide the services they were formed to provide." *EBSC I*, 932 F.3d at 765 (cleaned up); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) ("*EBSC II*") (merits panel reaching same conclusion). Organizations therefore have standing if a challenged law "frustrates the organization's goals and requires the organization 'to expend resources . . . they otherwise would spend in other ways.'" *EBSC I*, 932 F.3d at 765 (quoting *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) (en banc)). Under this test, civil rights groups that promote voting and voter registration in support of their missions have standing to challenge state actions that make voting and voter registration more difficult, causing them to "expend[] additional resources that they would not otherwise have expended, and in ways that they would not have expended them." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1036–37, 1039–42 (9th Cir. 2015). Organizational standing requires "only a minimal showing of injury." *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007). A concrete, redressable harm "amount[ing] to pennies" can be sufficient. *EBSC II*, 993 F.3d at 663, 664.

MFOL Idaho is a youth-led organization, and its mission is to "harness[] the power of young people to fight for common sense solutions to end gun violence in Idaho." CSMF ¶ 43. To pursue that mission, it "conducts voter registration, turnout, and education activities focused on young voters." *Id.* ¶ 44. Some of its members and constituents lack an acceptable form of identification under House Bill 340 and would not qualify for or be able to obtain a no-fee identification card before election day, including those who have recently moved to Idaho with an active out-of-state driver's license, those who turn eighteen years old on or shortly before election day, and those who do not have a driver's license and are unable to drive themselves to the Department of Motor Vehicles ("DMV"). *Id.* ¶¶ 49, 51–53, 56. House Bill 340 "makes it harder for those voters to register and vote and harder for MFOL Idaho to successfully register and turn them out to vote." *Id.* ¶ 48. Educating their young voters on the new voter registration requirements and helping them obtain acceptable identification in time to register for the election is "onerous and time-consuming." *Id.* Moreover, one of the least expensive forms of acceptable identification for voters is the concealed weapons license. *Id.* ¶ 50. But MFOL Idaho has a central mission to end gun violence in Idaho, and it is anathematic to MFOL Idaho's constituents to encourage people to obtain a concealed carry license in order to exercise their right to vote. *Id.* House Bill 340 therefore "detract[s] from MFOL Idaho's organizational mission" and "require[s] MFOL Idaho to divert resources towards voter education from other programming to ameliorate the law's disenfranchising and vote suppressing impacts." *Id.* ¶ 54.

To respond to House Bill 340, MFOL Idaho has diverted and will continue to divert a significant amount of time and effort into creating voter education materials to educate its constituents about the new voter registration requirements, calling DMV offices for guidance on obtaining a no-fee identification, re-training its volunteers on the effects of House Bill 340 on voter

registration requirements, and helping its constituents obtain acceptable House Bill 340 identification. *Id.* ¶ 55. MFOL Idaho is led by high school students with limited time and resources, and the time spent combatting the effects of House Bill 340 detracts from other activities central to its organizational mission like advocating for and educating its constituents on common-sense gun reform policies, organizing rallies and protests against gun violence, and holding vigils to honor those impacted by gun violence. *Id.* ¶ 57.

The Alliance's mission is to "protect the civil rights of retirees," and it furthers that mission by "spend[ing] resources—staff and volunteer time and financial—on voter registration, get-out-the-vote activities, and other voter engagement and education activities[.]" *Id.* ¶¶ 58, 64. House Bill 340 inevitably will force the Alliance "to divert resources away from [other] activities and towards educating its members about the stricter voter registration requirements and helping them obtain acceptable photo identification to register to vote." *Id.* ¶ 65. The time and resources spent educating its members about the strict voter registration requirements under House Bill 340 and helping them obtain acceptable identification to register to vote detracts from its programming focused on recruiting new members, opening new chapters, making presentations to members, and promoting substantive policy campaigns in areas such as retirement income security, pension protections, social security, Medicare, Medicaid, and services for older Idahoans. *Id.* ¶ 64. House Bill 340 frustrates the Alliance's mission of "protect[ing] the civil rights of retirees and ensur[ing] that they obtain social and economic justice," both because voting is itself a civil right and because barriers to members' voting "threaten[] the electoral prospects of the candidates the Alliance endorses and mak[e] it more difficult for the Alliance and its members to associate to effectively further their shared political goals." *Id.* ¶¶ 58, 63.

**B.      House Bill 340 injures Plaintiffs' members and constituents.**

Separate and apart from their direct organizational injury, Plaintiffs also have associational

standing to sue on behalf of their injured members and constituents. An organization can sue on behalf of its members "when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021). The claims do not require the participation of individual members when plaintiffs seek only declaratory and injunctive relief based on a facial challenge to statutes. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977). Nor is formal membership required for associational standing where the organization "serves a 'specialized segment' of" the community that is the "primary beneficiar[y] of" the organization's work, giving the organization "a personal stake in the outcome of [the] lawsuit." *Am. Unites for Kids*, 985 F.3d at 1096–97; *see also Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1110–11 (9th Cir. 2003) (rejecting "formalistic" approach and concluding that beneficiaries of organization's mission were "the functional equivalent of members").

MFOL Idaho is a "youth-led organization" led by "eight young activists, and its constituents include hundreds of volunteers, supporters, and community members registered with the organization who share in its concern about gun violence; show up to its events, rallies, protests, trainings, and voter registration drives; and benefit from, share in, and help guide the organization's priorities and activities." CSMF ¶¶ 43, 45. MFOL Idaho targets its voter registration and turnout efforts at young voters who are "concerned about gun violence and see voting as an opportunity to make their voices and concerns heard." *Id.* ¶ 47. Its advocacy campaigns and voter engagement efforts are driven by its constituents' concerns about rising gun violence and seek to engage additional young activists in the political process. *Id.* ¶¶ 44–46. MFOL Idaho's constituents are primarily high school and college students who all possess student identification cards but are

now unable to use them to register to vote. *Id.* ¶ 49. Some constituents do not possess a driver's license and had previously relied on their student identification cards. *Id.* House Bill 340 "harms MFOL Idaho's constituents, including the voters whom MFOL Idaho registers and MFOL Idaho's volunteers who register and turn out voters," by making it "harder for [them] to register and vote[.]" *Id.* ¶ 48. Many of its most active constituents are high school students who cannot yet vote, and some of them will turn eighteen years old shortly before election day and will be unable to obtain a no-fee identification card in time for election day. *Id.* ¶ 52. Other constituents moved or will move to Idaho for school and possess a still-valid out-of-state driver's license that disqualifies them from receiving a no-fee identification card. *Id.* ¶ 53. MFOL Idaho serves a "specialized segment" of Idaho voters that is the primary beneficiary of its work—young people concerned about gun violence—and House Bill 340 imposes a poll tax on some of its constituents, forcing them to pay a government fee for identification to vote. *See Am. Unites for Kids*, 985 F.3d at 1096.

The Alliance has 11,407 formal members who are all Idaho residents, many of whom are retirees from public and private sector unions, and who "benefit from, share in, and help guide the organization's priorities and activities." CSMF ¶ 60. Many of its members are elderly, and some members "no longer drive and accordingly have no need to renew their driver's license—but may be forced to if they want to vote as a result of House Bill 340." *Id.* ¶ 61. Of course, members who no longer drive experience greater difficulty traveling to the DMV to obtain an identification card. *Id.* ¶ 62. Other Alliance members are new to Idaho after retiring or moving here and are not yet registered to vote in Idaho. *Id.* ¶ 61. Others anticipate that they will need to re-register because they are moving to a new address or have not voted in the last four years. *Id.* House Bill 340 "makes it harder" for these members "to register to vote and will force some of them to pay a

government fee for an identification card in order to register to vote." *Id.* ¶ 62.

House Bill 340 injures Plaintiffs' members and constituents by forcing individuals who do not meet the requirements for a no-fee identification to pay for an accepted government-issued identification in order to exercise their right to vote. But House Bill 340 also injures Plaintiffs' members and constituents who may technically be eligible for a no-fee identification but are not ultimately able to obtain one, due to the practical barriers to making a timely trip to the DMV or simply not being informed about the option to do so. *See, e.g.*, CSMF ¶¶ 19, 33–34. At least one county has instructed its staff "not to offer" the no-fee identification card, but instead to require eligible voters to "ask for it specifically." CSMF ¶ 41. And as of August 8, 2023, a total of <u>four</u> no-fee identification cards had been issued statewide. CSMF ¶ 42.

### C.        Traceability and redressability

Plaintiffs' injuries are directly traceable to Secretary McGrane's actions implementing House Bill 340, and, as this Court has already determined, Secretary McGrane's ability to issue binding directives to county clerks satisfies the redressability requirement. Slip Op. at 7, ECF No. 47. Traceability examines the "connection between the alleged misconduct and injury," while redressability analyzes the "connection between the alleged injury and requested relief" and is "satisfied so long as the requested remedy 'would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" *Mecinas*, 30 F.4th at 899–900 (quoting *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012)). The two elements are closely related. *See id*.

Idaho law requires Secretary McGrane to issue binding directives on all aspects of election law to county clerks and requires county clerks to follow them. He "shall cause to be prepared and distributed to each county clerk detailed and comprehensive written directives and instructions relating to and based upon the election laws as they apply to elections, registration of electors and

voting procedures which by law are under the direction and control of the county clerk." Idaho Code § 34-202. And "[e]ach county clerk affected thereby shall comply with such directives and instruction." *Id*. Plaintiffs' injuries flow directly from Secretary McGrane's directives to county clerks implementing House Bill 340. CSMF ¶ 17. An order against Secretary McGrane will redress Plaintiffs' injuries because the counties "would have no choice but to follow a mandate from [him]" precluding enforcement of House Bill 340, which would "amount to a significant . . . likelihood that the plaintiff[s] would obtain relief." *Mecinas*, 30 F.4th at 900; *Renee*, 686 F.3d at 1013.[2]

There is no genuine dispute over any of the material facts demonstrating Plaintiffs' standing to assert their poll tax claim, and the Court should grant summary judgment in Plaintiffs' favor on the question of their standing.

## II. House Bill 340 violates the Twenty-Fourth Amendment and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution as an unconstitutional poll tax.

The undisputed facts demonstrate that House Bill 340 is a straightforward violation of the Twenty-Fourth Amendment and Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. The Twenty-Fourth Amendment provides that "[t]he right of citizens of the United States to vote . . . for President or Vice President . . . or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax." As the Supreme Court has emphasized, the Twenty-Fourth Amendment "nullifies sophisticated as well as simple-minded modes of impairing the right [to vote]" and "hits

---

[2] Secretary McGrane's lack of authority over the issuance of identification cards is irrelevant, and Plaintiffs have no objection to the free identification card itself, which does not eliminate the constitutional problems with the changes to voter registration and voter identification requires. Plaintiffs seek an injunction against "enforcing House Bill 340's requirement of photo identification to register to vote," ECF No. 20 at 29—and voter registration is a procedure clearly under Secretary McGrane's direction.

onerous procedural requirements which effectively handicap exercise of the franchise." *Harman v. Forssenius*, 380 U.S. 528, 540-41 (1965) (quotation marks omitted). As a result, it not only prohibits *disenfranchising* voters who cannot pay a poll tax, but also "expressly guarantees that the right to vote shall not be 'denied' *or abridged*'" on the same basis. *Id.* (emphasis added). Thus, under the Twenty-Fourth Amendment, no poll tax nor an "equivalent or milder substitute may be imposed" as a prerequisite to voting, and "constitutional deprivations may not be justified by some remote administrative benefit to the State," such as proving residence. *Id.* at 542.

A state also violates the Equal Protection Clause of the Fourteenth Amendment "whenever it makes the affluence of the voter or payment of any fee an electoral standard" and whenever a state sets "voter qualifications which invidiously discriminate." *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 666 (1966). A statute is an unconstitutional poll tax when it imposes a requirement that is "not germane to one's ability to participate intelligently in the electoral process," and payment of a fee has "no relation to voting qualifications." *Id.* at 668, 670. Conditioning the right to vote on the payment of a fee is an "invidious discrimination" and a per se violation of the Equal Protection Clause. *Id.* at 667. The same principle applies "whether the citizen, otherwise qualified to vote, has [funds to pay the poll tax] or nothing at all, pays the fee or fails to pay it"—requiring payment of a fee to vote is an unconstitutional poll tax. *Id.* at 668. The Supreme Court has noted that "[t]he fact that most voters already possess a valid driver's license, or some other form of acceptable identification, would not save [a] statute . . . if the State required voters to pay a tax or a fee to obtain a new photo identification." *Crawford*, 553 U.S. at 198.

A.      **House Bill 340 requires payment of a government fee in order to vote.**

House Bill 340 imposes an unconstitutional poll tax in violation of the Twenty-Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment by requiring some voters to pay a fee for a state- or federal-issued identification card to register to vote. There is no

dispute that House Bill 340 requires that everyone registering to vote, regardless of registration method, show one of four approved forms of photo identification: a current Idaho driver's license or identification card; a current passport or other U.S. government identification card; a current tribal identification card; or a current Idaho license or enhanced license to carry concealed weapons. 2023 Idaho H.B. 340, § 5 (codified at Idaho Code § 34–411(3)). Nor is there any dispute that the approved forms of identification generally require payment of a government fee. CSMF ¶¶ 8, 10–13. Indeed, the record demonstrates that the Secretary of State's Office, the Idaho Transportation Department ("ITD"), sheriffs, and legislators understood that identification cards impose a cost, *id.* ¶¶ 39–40, and even that House Bill 340's identification requirement could be understood as imposing a poll tax, *id.* ¶¶ 20–24.

While House Bill 340 provides for no-fee identification cards for some voters, there is no dispute that swaths of eligible voters are excluded from obtaining no-fee identification cards, which are only available for individuals who are eighteen years old or older who have not possessed a current driver's license in the preceding six months and who indicate that they need the identification to vote. 2023 Idaho H.B. 340, § 8 (codified at Idaho Code § 49–2444(22)). No-fee identification cards are therefore unavailable to (1) voters with an active driver's license that expires within six months before an election but who no longer drive and would otherwise not renew their driver's licenses, (2) voters who move to Idaho shortly before election day and have not yet surrendered their still-valid out-of-state driver's license in exchange for an Idaho driver's license, and (3) voters who turn eighteen on or shortly before election day and are unable to obtain an identification card in time for election day.

Secretary McGrane has admitted that seniors who are no longer driving but have a driver's license that will expire in the six months before an election will not be allowed to get a no-fee

identification card. CSMF ¶¶ 30, 36–37. The same is true for nursing home residents. *Id.* ¶ 32. At the same time, Secretary McGrane testified that "the most likely users of the no-fee ID would actually be seniors" because they "often had a driver's license that is then expiring" but would still need identification for voting. *Id.* ¶¶ 36–37. In other words, the Secretary acknowledged the need for no-fee cards in this exact population, while at the same time admitting that the no-fee cards are not an option for anyone who has had a driver's license within six months of the election. Those voters are simply out of luck. Their right to vote without having to pay a fee has been sacrificed to the State's desire to protect its purse strings, even if it causes some eligible Idaho residents to have to pay a fee in order to exercise their fundamental right to vote. *See id.* ¶ 27 (Secretary McGrane testifying that the restrictions on who is eligible for a no-fee identification card were motivated by concerns about the revenue impact of the no-fee identification cards on the ITD).

Other entirely eligible Idahoans who are likely to have to decide whether to pay a fee in order to be able to vote include those who have recently moved to the state. Many of these voters will not qualify for the no-fee identification card because they *have* a valid driver's license—it is simply not an Idaho driver's license. *Id.* ¶ 31. The burden on voters with a valid out-of-state driver's license is further exacerbated by the fact that an Idaho driver's license requires passing a written knowledge test. *Id.* ¶ 28. And voters who turn eighteen on or shortly before an election day are also uniquely burdened by the new law: because they cannot obtain a no-fee identification until they turn eighteen, they may have only a very narrow window in which they may get to the DMV to request a no-fee identification card, no wiggle room for any errors in the process, and no guarantee that the no-fee identification card will arrive in the mail in time for them to use it to register to vote on election day. *Id.* ¶¶ 19, 33–34.

There is accordingly no material dispute that House Bill 340 levies a poll tax on voters who

lack an acceptable form of identification and who do not qualify for or are denied a no-fee identification card by requiring those voters to pay a government fee for an identification card in order to vote. The ability to pay that fee is not germane to voter qualifications, and conditioning the right to vote on payment of that fee is a per se violation of the Equal Protection Clause. *Harper*, 383 U.S. at 688. The poll tax imposed by House Bill 340 cannot be justified by some "remote administrative benefit to the State." *Harman*, 380 U.S. at 542.

      **B.**        **House Bill 340 requires payment of a fee directly to the state.**

The facts in this present case differ from the circumstances in *Gonzalez v. Arizona* and *Crawford v. Marion County*, where the challenge to the law focused on the burden to voters to obtain the *underlying documents* to apply for identification cards or to vote. *Gonzalez v. Arizona*, 677 F.3d 383, 409 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013); *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008).

In *Crawford*, the state provided free photo identification cards for all qualified voters, and the issue before the court was whether the burdens of going to the Bureau of Motor Vehicles (BMV), obtaining the documents required to apply for an identification card,[3] and having a photograph taken were substantial. 553 U.S. at 198 ("But just as other States provide free voter registration cards, the photo identification cards issued by Indiana's BMV are also free. For most voters who need them, the inconvenience of making a trip to the BMV, gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote."). In fact, the court distinguished the Indiana law from the poll tax in *Harper* by noting that this was *not* an instance in which the "State required voters to pay a tax or a fee to obtain new

---

[3] To obtain a free identification card, prospective voters needed to present a "primary" document, which could be a birth certificate, certificate of naturalization, U.S. veterans photo identification, U.S. military photo identification, or a U.S. passport, and obtaining one of these documents may require payment of a fee. *Crawford*, 553 U.S. at 198 n.17.

photo identification." *Id.* House Bill 340, by contrast, does just that.

Similarly, the law at issue in *Gonzalez* allowed voters to present "these same sorts of … documents" to vote as those required in *Crawford* to obtain a free identification card and was therefore "no more burdensome." *Gonzalez*, 677 F.3d at 410. The law in *Gonzalez* required voters who wished to vote in-person at their polling location to show *any* of the following: "identification that bears the photograph, name and address of the elector"; "[t]wo different items that contain the name and address of the elector"[4]; or "a valid form of identification that bears the photograph, name and address of the elector." Ariz. Rev. Stat. Ann. § 16-579(A)(1). These requirements to vote at the polls are significantly more flexible than the options under House Bill 340—and are more similar to the requirements to register to vote that were in place in Idaho *before* House Bill 340. Moreover, as the *Gonzalez* court pointed out, under the laws in place in Arizona at the time, voters without a form of identification had the option to vote early, which did not require voters to show any form of identification. *Gonzalez*, 667 F.3d at 408, n. 37.

Unlike *Crawford* and *Gonzalez*, for Idaho voters who are ineligible for the free identification, there is no option other than to pay a fee or forego the right to vote. The government fee to obtain an acceptable identification card is thus *assessed by the state* as a *requirement to vote* for at least some voters. This textbook unconstitutional poll tax must be struck down.

## CONCLUSION

The Court should grant partial summary in Plaintiffs' favor and find that House Bill 340 imposes an unconstitutional poll tax in violation of the Twenty-Fourth Amendment and the Equal

---

[4] These documents include but are not limited to "a utility bill, a bank or credit union statement that is dated within ninety days of the date of the election, a valid Arizona vehicle registration, an Arizona vehicle insurance card, an Indian census card, tribal enrollment card or other form of tribal identification, a property tax statement, a recorder's certificate, a voter registration card, a valid United States federal, state or local government issued identification or any mailing that is labeled as 'official election material.'" Ariz. Rev. Stat. Ann. § 16-579(A)(1)(b).

Protection Clause of the Fourteenth Amendment.

Dated: November 17, 2023                    Respectfully submitted,

/s/ *Abha Khanna*
Terri R. Pickens (ISB #5828)
**PICKENS LAW, P.A.**
398 S. 9th Street, Suite 240
Boise, ID 83702
terri@pickenslawboise.com
Tel: (208) 954-5090
Fax: (208) 954-5099

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
akhanna@elias.law
Tel: (206) 656-0177

Elisabeth Frost*
David R. Fox*
Justin Baxenberg*
Daniel Cohen*
Qizhou Ge*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
efrost@elias.law
dfox@elias.law
jbaxenberg@elias.law
dcohen@elias.law
age@elias.law
Tel: (202) 968-4490

*Attorneys for Plaintiffs*
*Admitted pro hac vice

19

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to all counsel of record.

/s/ *Abha Khanna*